■ In the Matter of DAWN GOSSWEILER, Respondent, v FINANCE INVESTMENT COMPANY (BERMUDA), LTD., et al., Appellants, et al., Respondents.—Mikoll, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Stolarik, J.), entered September 18, 1989 in Rockland County County, which, *inter alia,* granted petitioner's application pursuant to CPLR article 62 for an order determining her rights to certain attached escrow funds.

The question presented on this appeal is whether Supreme Court properly ruled that petitioner be awarded $69,098.67[1] from $250,000 of escrow funds held pursuant to an attachment which secured a judgment against petitioner's husband, Robert Gossweiler (hereinafter Gossweiler), in an action for conversion, breach of fiduciary duty and unfair competition.[2] We answer in the affirmative. The order of Supreme Court should therefore be affirmed.

Petitioner and Gossweiler were owners as tenants by the entirety of their marital home which they acquired in 1982. On May 13, 1982, they gave respondent Finance Investment Company (Bermuda), Ltd. (hereinafter Finance Investment) a mortgage on the marital home for the sum of $175,000 (hereinafter the first mortgage).

In or about April 1985, Finance Investment and those respondents involved in this appeal (hereinafter collectively referred to as respondents) commenced an action against Gossweiler only, for alleged conversion and misappropriation of certain personal property (hereinafter the conversion action). Concededly this conversion action had nothing to do with petitioner. In May 1985, an independent foreclosure action was commenced by Finance Investment against both petitioner and Gossweiler (hereinafter the foreclosure action). Summary judgment was granted in the foreclosure action in favor of Finance Investment and against both petitioner and

---

1. Supreme Court inadvertently erred in its calculations of what one half of $47,600 would be, originally stating it to be $28,800 and the total amount due petitioner as $64,098.67. This was corrected by a consent order amending the court's original order, nunc pro tunc, to read $23,800 in place of $28,800 and $69,098.67 in place of $64,098.67.

2. The parties have stipulated that the escrow funds awarded in Supreme Court's order will not be distributed pending determination of this appeal.

Gossweiler on November 18, 1985. However, judgment was not entered therein until almost two years later.

On April 1, 1987, respondents obtained an order of attachment in the conversion action directing the Sheriff of Rockland County to levy against the property of Gossweiler in the sum of $250,000 describing the marital home. This attachment was filed in the Rockland County Clerk's office on April 8, 1987.[3] Thereafter, in July 1987, the marital home was sold by petitioner and Gossweiler to a third party. The existing prior liens and encumbrances against the joint interest of petitioner and Gossweiler were paid at closing, as well as adjustments and expenses related to the sale. At that time, payment in full satisfaction of the mortgage debt was tendered to the attorneys for Finance Investment. Furthermore, respondent Michael Katz, the attorney for petitioner and Gossweiler, deposited into escrow the sum of $250,000 in lieu of the attachment (hereinafter the escrow fund). This sum is the subject matter of the instant proceeding brought by petitioner.

Following the closing, Finance Investment refused to accept the tender of the $232,567.87 in satisfaction of the first mortgage, and instead pursued the foreclosure action. In September 1987, Finance Investment obtained a final judgment in that action against both petitioner and Gossweiler and sought to enforce it. However, Supreme Court issued a decision in the foreclosure action finding that the foreclosure sale was stayed pursuant to RPAPL 1341 (2) and that the payment of the $232,567.87 into court discharged the lien of the mortgage. Supreme Court then dismissed the foreclosure action. The order of Supreme Court was affirmed on appeal to the Second Department (see, Finance Inv. Co. v Gossweiler, 145 AD2d 463, lv dismissed 74 NY2d 650, lv denied 74 NY2d 881).

Subsequent to the decision entered in the foreclosure action, the parties in that action stipulated that the $232,567.87 check deposited in the escrow account "shall be deemed a deposit into Court pursuant to RPAPL Section 1341". In November 1988, respondents submitted a proposed final judgment in the conversion action which, inter alia, sought release of the $250,000 placed in escrow in lieu of the attachment in partial satisfaction of the judgment against Gossweiler.

Petitioner then commenced the instant proceeding pursuant to CPLR 6221 in November 1988 to determine her rights in

---

**3.** An earlier order of attachment obtained by respondents in April 1985 was never filed. The earlier order was modified by Supreme Court and became the present attachment.

the escrow fund, claiming that the fund erroneously included moneys which belonged to petitioner. She argued that since the attachment was against Gossweiler's interest only, and since his one-half share of the proceeds of the sale remaining after payment of the prior liens and expenses was less than the $250,000 of the escrow fund, the escrow fund included moneys due her. Respondents served an answer and counterclaim against petitioner seeking damages under the loan note secured by the first mortgage. They also moved to dismiss the petition. Respondents claimed for the first time that the first mortgage should be deemed paid out of petitioner's one-half share of the proceeds of the sale arguing that the first mortgage of $232,567.87 should be charged to petitioner's interest in the sale proceeds, leaving the remaining net proceeds belonging to Gossweiler sufficient to satisfy their attachment.

On March 24, 1989, Supreme Court determined that petitioner was entitled to an equal share of the net proceeds from the sale of the marital home and that her interest in the escrow fund was $24,683.94, but gave her the right to a hearing by filing a note of issue within 10 days if she believed she was entitled to more. Supreme Court also ruled that the first mortgage was a joint obligation which was paid by petitioner and Gossweiler by the deposit of the sum of $232,567.82 with Supreme Court and dismissed both respondents' counterclaim and motion for dismissal of the petition.

Both petitioner and respondents moved for reargument and/or modification of Supreme Court's order. Petitioner argued that Supreme Court only deducted the first mortgage and not the other joint liens and expenses which had priority over the attachment and which impacted upon the net amount available to Gossweiler. Respondents argued that petitioner was not entitled to any award. In denying the motions of both sides for reargument, Supreme Court noted that under its original order, if petitioner disagreed with the amount awarded she could file a note of issue for a hearing on that issue alone. Petitioner then filed a note of issue. At the hearing, petitioner claimed that certain deductions should have been allowed. Respondents contended, as they had earlier, that the issue before Supreme Court was whether the debt on the first mortgage should be a debt of petitioner alone and not a joint obligation. They also made objection to the claim for certain brokerage fees. Proof was taken and Supreme Court allowed the deductions claimed with the exception of the $47,000 brokerage fee. It allowed only one half of the brokerage fee ($23,500) as a deduction since it was in-

curred after the attachment was levied. Petitioner's award from the escrow fund was finally determined to be $69,098.67. This appeal ensued.

Respondents contend that petitioner and Gossweiler were jointly and severally liable on the mortgage and, as such, are each fully liable for the entire debt, and that it was therefore error for Supreme Court to attribute payment on the mortgage to them pro rata. Respondents concede that petitioner and Gossweiler are each entitled to 50% of the proceeds of the marital home held by them as tenants by the entirety. However, they argue that once the proceeds are divided, the creditor can look to either primary obligor for full payment of the obligation. They assert that in attempting to deduct the full amount of the mortgage from the gross proceeds of the sale, petitioner is seeking to compel Finance Investment to accept one half of the mortgage payment from each of the primary obligors, effectively depriving Finance Investment of the collateral by the private sale of the marital property while forcing Finance Investment to allocate the debt as if the collateral remained. Respondents rely on *Brown v Arcuri* (43 AD2d 993) and *Seacomm Fed. Credit Union v Hanley* (138 AD2d 798) to support their position.

It is correct that a creditor can look to a comaker or coborrower for the entire amount due on the debt after default before resorting to the collateral. That is what occurred in *Seacomm Fed. Credit Union v Hanley (supra),* where the plaintiff/creditor executed on a husband's individual accounts with it to satisfy the notes made by him individually, leaving a balance due from the wife on the joint note. The wife claimed that the husband's accounts should have first been applied to joint obligations, and if this was done the joint obligations would have been satisfied, absolving her of liability. This court on appeal held that "[a] creditor is not required to proceed first against the security before seeking to enforce the terms of the note" *(supra,* at 799).

However, in contrast to the way the creditor proceeded in *Seacomm,* here, Finance Investment proceeded first against the collateral by the foreclosure action, and the sum of $232,567.87 paid into court pursuant to RPAPL 1341 (2) operated to redeem the property. The problem respondents have with their argument is that they did not first proceed against petitioner as a comaker. The sum deposited under RPAPL 1341 consisted of the proceeds derived from the sale of the marital home owned by petitioner and Gossweiler as tenants by the entirety. The proceeds were then owned by

them as tenants in common with a 50% interest in each *(see, Hawthorne v Hawthorne,* 13 NY2d 82; *Matter of Blumenthal,* 236 NY 448; *see also, Secrist v Secrist,* 284 App Div 331, *affd* 308 NY 750). Supreme Court applied the money reflecting that ownership interest. Supreme Court properly held that a lien on the property against Gossweiler's interest could not diminish or encumber petitioner's one-half share of the marital home sale proceeds *(see, supra).* At no time was any distinction made by Finance Investment in proceeding on the mortgage between the obligations of petitioner and Gossweiler. Respondents chose to first proceed against both petitioner and Gosswieler in the foreclosure action. Supreme Court was then correct in holding that the payment by the "defendants" discharged the lien. That payment was accepted by the attorneys for Finance Investment as the equivalent of the requirements under RPAPL 1341 (2). Thus, the record indicates that Supreme Court could properly deduct payment of the first mortgage as a joint obligation chargeable against both petitioner and Gossweiler.

Order affirmed, with costs. Kane, J. P., Weiss, Mikoll, Mercure and Harvey, JJ., concur.